*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

TRAVIS MEGUAL WILSON,

Defendant-Appellant.

UNPUBLISHED
August 1, 2019

No. 340542
Wayne Circuit Court
LC No. 16-006749-01-FC

Before: SAWYER, P.J., and CAVANAGH and SERVITTO, JJ.

PER CURIAM.

Defendant appeals as of right his bench trial convictions of second-degree murder, MCL 750.317,[1] felon in possession of a firearm, MCL 750.224f, and possession of a firearm during the commission of a felony, second offense, MCL 750.227b. The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to prison terms of 35 to 60 years for the murder conviction and two to five years for the felon-in-possession conviction, to be served concurrently, but consecutive to a five-year term of imprisonment for the felony-firearm conviction. We affirm.[2]

---

[1] The court convicted defendant of second-degree murder as a lesser offense to an original charge of first-degree premeditated murder, MCL 750.316(1)(a).

[2] This Court originally prepared a proposed opinion in May 2019. However, the court reporter responsible for transcribing the trial proceedings filed amended transcripts in this matter after the opinion was prepared. To ensure that this matter was decided correctly and on an accurate record, this Court held up release of the opinion until a comparison of the transcripts could be made. We have since reviewed the amended transcripts that we have received and have determined that while there were many, many errors and corrections, none of them affect our decision in this matter.

Defendant's convictions arise from the July 15, 2016 shooting death of Cedric Smith in Detroit. The prosecution presented evidence that the shooting was preceded by a quarrel involving several individuals and spectators. Defendant arrived at the scene and attempted to break up some fighting. One of the participants wanted to fight defendant, but then Smith intervened and struck defendant in the face. Afterward, defendant obtained a gun from another man. Defendant then fired several gunshots and threatened the crowd of people, who scattered. Witnesses testified that defendant chased Smith between two houses and additional gunshots were heard. After the gunfire stopped, Smith's body was found in a nearby vacant lot; he had been shot several times and died from his wounds. After the shooting, witnesses saw defendant running from the area and getting into a vehicle. The police arrived before the vehicle left and witnesses alerted the police to the vehicle, identifying defendant as the person who shot Smith. The police pursued defendant and arrested him within 15 or 20 minutes of the shooting.

The defense theory at trial was that there were at least two other people armed with guns at the scene and there was no credible evidence identifying defendant as the person who shot Smith. The defense further argued that this was "not a first degree premeditated murder case." Accordingly, defense counsel requested "a not guilty verdict . . . or at the very least dismissal of the premeditation murder charge."

The trial court found beyond a reasonable doubt that the evidence established defendant's identity as the person who shot Smith, but did not establish that defendant acted with premeditation and deliberation. Accordingly, the court found defendant guilty of the lesser offense of second-degree murder and the two firearm charges.

## I. INEFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL

Defendant first argues that the trial court erred by denying his motion for a new trial based on his claims of ineffective assistance of counsel at trial. We disagree.

Whether a defendant has been denied the effective assistance of counsel is a mixed question of fact and constitutional law. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). The trial court's factual findings are reviewed for clear error. *Id.* Whether the facts as found by the trial court establish a violation of the defendant's right to the effective assistance of counsel is a question of constitutional law, which is reviewed de novo. *Id*.

To establish ineffective assistance of counsel, defendant must show that counsel's performance fell below an objective standard of reasonableness, and that the representation so prejudiced defendant that he was denied his right to a fair trial. *People v Pickens*, 446 Mich 298, 338; 521 NW2d 797 (1994). Defendant must overcome the presumption that the challenged action might be considered sound trial strategy. *People v Tommolino*, 187 Mich App 14, 17; 466 NW2d 315 (1991). To establish prejudice, defendant must show that there is a reasonable probability that, but for his counsel's error, the result of the proceeding would have been different. *People v Johnson*, 451 Mich 115, 124; 545 NW2d 637 (1996). The burden is on defendant to produce factual support for his claim of ineffective assistance of counsel. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

Defendant first argues that defense counsel was ineffective for not calling Delisha Young as a witness at trial. According to defendant's girlfriend, Tiara Vann, Young was a passenger in her car when Vann drove defendant to the neighborhood location where the shooting occurred. According to Vann, however, Young remained inside the car during the events. "Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy, and this Court will not substitute its judgment for that of counsel regarding matters of trial strategy." *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002). "[T]he failure to call witnesses only constitutes ineffective assistance of counsel if it deprives the defendant of a substantial defense." *People v Dixon,* 263 Mich App 393, 398; 688 NW2d 308 (2004).

Although defendant asserts that Young would have provided exculpatory testimony, he never submitted an affidavit from Young showing what testimony she would have provided if called to testify. Defendant relies on his own affidavit in which he merely avers that Young "would have provided exculpatory testimony", but defendant again fails to specify what testimony she would have offered or how it would have been exculpatory. Because defendant did not satisfy his burden of producing factual support for his claim that Young would have provided favorable testimony, the trial court did not err by denying defendant's motion for a new trial on this ground.

Defendant also argues that defense counsel was ineffective for not objecting to the testimony of Jason Salerno, a special agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), who testified regarding his use of a canine, Jax. According to Salerno, Jax alerted to the presence of gunshot residue on a door handle of the vehicle that defendant fled from after it was stopped by the police, and also on defendant's pants just after defendant was taken into custody. The explosive residue on defendant's pants was later confirmed by testing at an ATF laboratory. Jax also alerted Salerno to the presence of .380 caliber ammunition underneath a mattress during the execution of a search warrant at defendant's home. Defendant argues that defense counsel should have objected to this testimony because the prosecution failed to establish a proper foundation for admitting the canine evidence. We disagree.

In *People v Lane*, 308 Mich App 38, 52-54; 862 NW2d 446 (2014), this Court held that the test adopted in *People v Harper*, 43 Mich App 500, 508; 204 NW2d 263 (1972), for establishing a foundation for admitting tracking-dog evidence also applies to evidence involving the use of cadaver dogs because cadaver-dog evidence is not significantly different from other forms of tracking-dog evidence. Tracking-dog evidence is sufficiently reliable if the proponent of the evidence demonstrates that

> (1) the handler was qualified to use the dog; (2) the dog was trained and accurate in tracking humans; (3) the dog was placed on the trail where circumstances indicate the alleged guilty party to have been; and, (4) the trail had not become so stale or contaminated as to be beyond the dog's competency to follow it. [*Lane*, 308 Mich App at 53.]

This test is also applicable to explosive-detection canines, such as Jax, who similarly "use a precise sense of smell to identify scents that are outside the range of human ability to detect." See *Id*. at 53. Thus, such evidence is sufficiently reliable when there is evidence that the four

elements set forth in *Lane*, 308 Mich App at 53, have been met. We find that in this case the evidence did so.

First, Salerno's testimony established that he was qualified to use Jax to detect explosives because both he and Jax had undergone training and had worked on hundreds of cases. Second, Salerno explained that Jax was trained to detect the presence of multiple types of explosives and had proven to be accurate in identifying different types of explosive materials. Third, evidence corroborated Jax's findings, particularly with regard to the presence of gunpowder on defendant's pants, because testing at the ATF's laboratory confirmed the presence of gunpowder residue on the pants. Jax was also able to identify ammunition found under a mattress in defendant's residence. Finally, Jax was used on the day of the offense, shortly after defendant was arrested, so there is no basis for suggesting that the conditions were stale or contaminated. No evidence suggested that Jax could not properly identify odors associated with explosives in any of the situations for which he provided positive responses to Salerno. In sum, the record reveals that a proper foundation for admitting Salerno's testimony regarding the use of his explosives-detecting dog was established at trial. Therefore, any objection on this ground would have been futile. Counsel is not ineffective for failing to make a futile objection. *People v Darden*, 230 Mich App 597, 605; 585 NW2d 27 (1998).

Defendant next argues that defense counsel was ineffective for calling two witnesses, Kadijah Byles (Byles) and Patricia Jones (Jones), who both provided testimony unfavorable to defendant. We agree that both witnesses provided testimony that ultimately was harmful to the defense. Byles corroborated the testimony of other witnesses about defendant obtaining a gun and both women stated that defendant was armed with a gun and was the only person chasing Smith just before Smith was shot. The decision whether to call these witnesses was a matter of trial strategy, and this Court "will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight." *People v Rockey*, 237 Mich App 74, 76-77; 601 NW2d 887 (1999). However, trial strategy must be sound, and "a court cannot insulate the review of counsel's performance by calling it trial strategy." *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). Counsel may be found ineffective with regard to a strategic decision if the strategy employed was not a sound or reasonable one. *People v Dalessandro*, 165 Mich App 569, 577-578; 419 NW2d 609 (1988). Therefore, we must determine if there was an objectively reasonable basis for calling Byles and Jones as witnesses.

Although both women gave testimony that ultimately was unfavorable to defendant, they both had given prior police statements that differed from their trial testimony and could be considered favorable to defendant. In her statement, Byles denied knowing the shooter and did not mention defendant. She also described seeing another man shooting as she ran into her house. This statement supported the defense theory at trial that there were other persons armed with guns present at the scene who could have shot Smith. Jones testified at trial that she did not know defendant at the time of this incident. In her statement to the police, she stated that she did not see anyone shooting and she did not mention defendant. Jones's police statement provided counsel with an objective basis for believing that her testimony would not be harmful to defendant. Jones also testified at trial that she heard another spectator speak to the occupants of a red Magnum and call for a "chopper." This testimony also supported the defense theory of an alternative shooting suspect. In sum, the record reveals that defense counsel had objective

-4-

grounds for believing that Byles and Jones would be able to offer favorable testimony that could support the defense theory of an alternative shooting suspect. "The fact that the strategy chosen by defense counsel did not work does not constitute ineffective assistance of counsel." *People v Williams*, 240 Mich App 316, 332; 614 NW2d 647 (2000).

Defendant also argues that defense counsel was ineffective for calling his mother as a witness. Defendant did not challenge counsel's decision to call his mother as a witness in his motion for a new trial. On appeal, he does not explain why his mother's testimony was particularly harmful to the defense. His mother was not present during the shooting and thus had no personal knowledge of the events surrounding the shooting. Because this claim has not been properly supported or developed, it cannot succeed.

Although defendant alternatively requests that this Court remand this matter for an evidentiary hearing, as discussed earlier, defendant has not provided an affidavit from Young regarding her proposed testimony. For his remaining arguments, he does not explain how the record should be further developed and has not provided any other offers of proof. Therefore, he has not demonstrated that remand for an evidentiary hearing is justified. See *People v McMillan*, 213 Mich App 134, 141-142; 539 NW2d 553 (1995).

## II. INEFFECTIVE ASSISTANCE OF COUNSEL DURING PLEA NEGOTIATIONS

Defendant was represented by three different attorneys throughout this case, each of whom engaged in plea discussions with the prosecutor. On October 14, 2016, defendant was offered a plea deal whereby he would receive a sentence of 22 to 40 years for second-degree murder, plus two years for felony-firearm, in exchange for dismissal of the remaining charges. He rejected that offer. At another hearing on February 13, 2017, the prosecutor offered defendant 22 to 50 years for second-degree murder, plus two years for felony-firearm, which he again rejected. At a hearing on April 28, 2017, the prosecutor offered 20 years for second-degree murder and five years for felony-firearm. At this hearing, defendant denied being aware that he was facing a five-year prison sentence for felony-firearm, but the trial court and the attorneys explained to him that he was subject to a five-year penalty because this was his second felony-firearm offense. Defendant rejected this offer on the record, and rejected it again at another pretrial conference on May 2, 2017, the last day available for accepting the offer.

Defendant now argues that his third attorney was ineffective because he was unaware of the original plea offer of 22 years for second-degree murder, plus two years for felony-firearm. Defendant contends that he should now be permitted to accept that offer. We disagree.

In *People v Douglas*, 496 Mich 557, 591-592; 852 NW2d 587 (2014), our Supreme Court set forth the standard that a defendant must satisfy to prove ineffective assistance of counsel with regard to a plea offer:

> As at trial, a defendant is entitled to the effective assistance of counsel in the plea-bargaining process. *Lafler v Cooper*, 566 US ___, ___; 132 S Ct 1376, 1384; 182 L Ed 2d 398 (2012). A defendant seeking relief for ineffective assistance in this context must meet *Strickland*'s familiar two-pronged standard by showing (1) "that counsel's representation fell below an objective standard of reasonableness,"

and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at ___; 132 S Ct at 1384. In demonstrating prejudice, the "defendant must show the outcome of the plea process would have been different with competent advice." *Id.* at ___; 132 S Ct at 1384. Where, as here, the alleged prejudice resulting from counsel's ineffectiveness is that the defendant rejected a plea offer and stood trial,

> a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed. [*Id.* at ___; 132 S Ct at 1385.]

When evaluating a plea offer, "[d]efense counsel must explain to the defendant the range and consequences of available choices in sufficient detail to enable the defendant to make an intelligent and informed choice." *People v Jackson*, 203 Mich App 607, 614; 513 NW2d 206 (1994). In *People v Corteway*, 212 Mich App 442, 446; 538 NW2d 60 (1995), this Court explained:

> The decision to plead guilty is the defendant's, to be made after consultation with counsel and after counsel has explained the matter to the extent reasonably necessary to permit the client to make an informed decision. See MRPC 1.2(a) and MRPC 1.4(b). While an attorney may elect to offer a client a specific recommendation whether to go to trial or to plead guilty in the course of that consultation, we decline to hold that such a recommendation is required or that the failure to provide such a recommendation necessarily constitutes ineffective assistance of counsel. The test is whether the attorney's assistance enabled the defendant to make an informed and voluntary choice between trial and a guilty plea.

Defendant is correct that he was originally offered a plea deal of 22 years for second-degree murder, plus two years for felony-firearm. It appears that at later hearings, the prosecutor and defendant's third attorney were confused or unaware of the terms of the original offer. Regardless, it is undisputed that the original offer was conveyed to defendant and that he rejected it on two separate occasions, first on October 14, 2016, and again on February 13, 2017. Even if defendant's third attorney was unaware of these prior offers, defendant was not entitled to have the offers remain open after having rejected them. Defendant has not explained how he was prejudiced by his third attorney's limited knowledge of the previous offers, particularly when defendant himself was aware of the offers and expressly rejected them.

Defendant complains that the attorneys originally did not realize that he was charged with felony-firearm, second offense, which is subject to a mandatory five-year prison term. Thus, the

earlier offers, which included only a two-year term for felony-firearm, were incorrect. But this does not entitle defendant to now obtain the benefit of the original offers. The trial court determined that, because defendant was actually charged with felony-firearm, second offense, he was not entitled to relief because, if he had attempted to plead guilty pursuant to an offer for a two-year term, "there is not a reasonable probability that the offer would have been accepted by this Court." The trial court also found that defendant was not entitled to the benefit of the original offer of 22 years for second-degree murder and two years for felony-firearm because "there is not a reasonable probability that the defendant would have accepted the original offer." Because the record shows that defendant was twice made fully aware of that original offer and rejected it both times, the trial court's finding is not clearly erroneous. Accordingly, defendant is not entitled to relief on his claim that he was denied the effective assistance of counsel during plea negotiations.

### III. SENTENCING

Defendant challenges his sentence of 35 to 60 years for second-degree murder on several different grounds. He argues that he is entitled to be resentenced because prior record variable (PRV) 5 was erroneously scored. He further argues that the sentence is unreasonable because it is disproportionate. Lastly, he argues that the sentence is unconstitutionally cruel and unusual. We reject each of these arguments.

At sentencing, the trial court's scoring of the sentencing guidelines for defendant's second-degree murder conviction resulted in a recommended minimum sentence range of 315 to 525 months. MCL 777.61. As the trial court recognized, however, because defendant was a fourth-offense habitual offender, the upper limit of this range increased to 1,050 months. MCL 777.21(3)(c). The trial court sentenced defendant to a minimum term of 35 years, which was within defendant's guidelines range, even before any habitual-offender enhancement.

Defendant subsequently filed a motion for resentencing, arguing that PRV 5 was erroneously scored and that the scoring error affected his appropriate guidelines range. The trial court agreed that PRV 5 was incorrectly scored, but observed that defendant's sentence was still within the corrected guidelines range of 270 to 450 months, even before any habitual offender enhancement, and it determined that it would have imposed the same sentence under the correctly scored guidelines. Therefore, the trial court denied defendant's motion for resentencing.

On appeal, defendant first argues that the trial court erred by denying his motion for resentencing after determining that PRV 5 was erroneously scored. Because a defendant is entitled to be sentenced according to accurately scored guidelines and in reliance on accurate information, a scoring error that affects a defendant's guidelines range ordinarily requires resentencing. *People v Francisco*, 474 Mich 82, 89-91; 711 NW2d 44 (2006). However, "[r]esentencing is . . . not required where the trial court has clearly indicated that it would have imposed the same sentence regardless of the scoring error and the sentence falls within the appropriate guidelines range." *Id.* at 89 n 8, citing *People v Mutchie*, 468 Mich 50, 51; 658 NW2d 154 (2003). In this case, the trial court expressly considered the effect of the scoring error on its original sentence, which is within the correctly scored guidelines range, and it determined that it would have imposed the same sentence, regardless of the scoring error.

Because the trial court has already reconsidered defendant's sentence under the correctly scored guidelines, defendant is not entitled to further relief with respect to this issue.

Defendant also argues that his sentence of 35 to 60 years is unreasonable and disproportionate. "A sentence that departs from the applicable guidelines range will be reviewed by an appellate court for reasonableness." *People v Dixon-Bey*, 321 Mich App 490, 520; 909 NW2d 458 (2017), oral argument gtd on the application 501 Mich 1066 (2018), quoting *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). In this case, however, defendant did not receive a departure sentence. MCL 769.34(10) requires that this Court affirm a sentence that is within the guidelines range absent an error in scoring the guidelines or reliance on inaccurate information. *People v Schrauben*, 314 Mich App 181, 196; 886 NW2d 173 (2016). See also *People v Anderson*, 322 Mich App 622, 636-637; 912 NW2d 607 (2018) ("this Court is required to review for reasonableness only those sentences that depart from the range recommended by the statutory guidelines"). Because defendant's sentence is within the accurately scored guidelines range for second-degree murder, this Court is not required to review the sentence for reasonableness and we must affirm the sentence, absent a constitutional violation.

Defendant also asserts, in a cursory argument, that his sentence is unconstitutionally cruel and unusual. The limitation on review in MCL 769.34(10) does not apply to claims of constitutional error. *People v Powell*, 278 Mich App 318, 323; 750 NW2d 607 (2008). The United States Constitution prohibits cruel and unusual punishment, US Const, Am VIII. This includes "a prohibition on grossly disproportionate sentences." *People v Bullock*, 440 Mich 15, 32; 485 NW2d 866 (1992). But "[a] sentence within the guidelines range is presumptively proportionate, and a proportionate sentence is not cruel or unusual." *People v Bowling*, 299 Mich App 552, 558; 830 NW2d 800 (2013). "In order to overcome the presumption that the sentence is proportionate, a defendant must present unusual circumstances that would render the presumptively proportionate sentence disproportionate." *Id*. (quotation marks and citation omitted).

In this case, defendant offers no unusual circumstances to overcome the presumption of proportionality. He merely points out that his sentence is near the high end of the correctly scored guidelines range of 270 to 450 months. Defendant fails to acknowledge, however, that he was also subject to an enhanced guidelines range as a fourth-offense habitual offender, which the trial court expressly recognized at sentencing. Regardless, defendant's minimum sentence of 35 years (420 months) is still within the correctly scored guidelines range even before any habitual-offender enhancement, and the mere fact that defendant's sentence is near the high end of this range is not such an unusual circumstance as to overcome the presumption of proportionality. We find no merit to defendant's argument that his sentence is unconstitutionally cruel and unusual.

IV. DEFENDANT'S STANDARD 4 BRIEF

Defendant presents additional arguments in an amended pro se supplemental brief[3], filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4, none of which have merit.

Defendant presents a series of arguments touching on different legal principles, some of which are not applicable to this case. In particular, he inappropriately relies on a court rule governing motions for relief from judgment, MCR 6.508, which is not applicable to this direct appeal. The focus of defendant's arguments is that he is innocent of the crimes charged and the evidence did not support his convictions. We disagree.

We review a challenge to the sufficiency of evidence offered in support of a conviction by viewing the evidence and reasonable inferences arising from the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could find each element of the crime proven beyond a reasonable doubt. *People v Petrella*, 424 Mich 221, 268-270, 275; 380 NW2d 11 (1985). Defendant was charged with first-degree premeditated murder, but the trial court found insufficient evidence of premeditation and deliberation and instead convicted defendant of the lesser offense of second-degree murder. Defendant does not argue that the evidence was insufficient to prove that Smith was killed under circumstances that would constitute second-degree murder.[4] Rather, he argues that the evidence was insufficient to identify him as the person who killed Smith. We disagree.

Identity is an essential element of every offense. *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). Positive identification by witnesses can be sufficient to support a conviction. *People v Davis*, 241 Mich App 697, 700; 617 NW2d 381 (2000). The credibility of identification testimony is a question for the trier of fact to resolve and this Court will not resolve the issue anew. *Id*.

Multiple witnesses who were familiar with defendant identified him as the person who obtained a gun from a bystander and began shooting while approaching the group of participants and spectators from an earlier fight. Witnesses testified that defendant chased after Smith and followed him between two houses, after which several gunshots were heard. Minutes later, Smith's body was found nearby and he had been shot several times. Although witnesses did not actually see defendant shoot Smith after the two men disappeared between the houses, the evidence of defendant chasing after Smith with the gun, the timing of the gunshots, and the

---

[3] Although titled as an "amended" standard 4 brief, the submitted pleading appears to actually be a supplemental standard 4 brief and we will treat it as such.

[4] The elements of second-degree murder are "(1) a death, (2) the death was caused by an act of the defendant, (3) the defendant acted with malice, and (4) the defendant did not have lawful justification or excuse for causing the death." *People v Smith*, 478 Mich 64, 70; 731 NW2d 411 (2007). "Malice is defined as 'the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and willful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm.' " *People v Werner*, 254 Mich App 528, 531; 659 NW2d 688 (2002) (citation omitted).

subsequent discovery that Smith had been shot several times supported a reasonable inference that defendant was the person who shot Smith. Accordingly, there is no merit to defendant's claim that the evidence was insufficient to prove his identity as the shooter.

Defendant also suggests that the trial court's verdict is against the great weight of the evidence. To determine whether a verdict in a bench trial is against the great weight of the evidence, a reviewing court must consider "whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *People v McCray*, 245 Mich App 631, 637; 630 NW2d 633 (2001). Defendant highlights the lack of physical evidence connecting him to the offense. He emphasizes that a gun was never recovered and that his fingerprints were not on a shell casing that was recovered near the scene. Although a gun was never recovered, the trial court, as the trier of fact, was entitled to credit the witness testimony describing defendant's possession and use of a firearm during the offense. Moreover, gunshot residue was detected on the car door handle that defendant used just before running from the police and residue was also found on defendant's pants.

Defendant also asserts that the trial court erred in denying his motion for directed verdict. This Court reviews a trial court's decision whether to deny a motion for a directed verdict de novo. *People v Chelmicki*, 305 Mich App 58, 64; 850 NW2d 612 (2014). Viewing the evidence in the light most favorable to the prosecution, only if the evidence presented up to the time the motion is made is insufficient to justify a reasonable trier of fact to find guilt beyond a reasonable doubt, must a directed verdict be entered. *Id*. As indicated above, the prosecution presented many witnesses who identified defendant as the only individual at the scene who had a gun and as the one who chased Smith between two houses while armed. Given the prosecution's evidence, defendant was not entitled to a directed verdict in his favor.

Defendant next contends that the bindover to trial by the district court was an abuse of discretion. However, "if a defendant is fairly convicted at trial, no appeal lies regarding whether the evidence at the preliminary examination was sufficient to warrant a bindover." *People v Bosca*, 310 Mich App 1, 45; 871 NW2d 307 (2015), quoting *People v Wilson*, 469 Mich 1018, 677 NW2d 29 (2004). Because we find that sufficient evidence was adduced at trial to uphold defendant's convictions, we need not address his claim of an erroneous bindover.

Next, Defendant suggests that the prosecutor violated *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963), by failing to present the actual bullet cartridge that was at the scene. In *Brady*, the Supreme Court held that it is a violation of due process for the prosecution to suppress material evidence favorable to an accused. *Id*. at 87. In this case, the prosecution presented evidence that a .40 caliber casing was found near the scene, but it was believed to be associated with a previous, recent incident at that location, not this shooting. There was no claim that the .40 caliber casing was evidence supporting defendant's guilt. Additional shell casings were not recovered, but testimony was presented that if defendant used a revolver to shoot Smith, it would not have ejected any casings. Regardless, because there is no evidence that the prosecution possessed evidence that it failed to disclose, defendant's claim that *Brady* was violated is without merit. Numerous witnesses testified that defendant was armed with a gun while chasing Smith between two houses, following which several gunshots were heard, and then it was discovered that Smith had been shot several times. The evidence does not

preponderate so heavily against the trial court's verdict—that defendant shot Smith under circumstances constituting second-degree murder—that it would be a miscarriage of justice to allow the verdict to stand.

Defendant also contends that the prosecutor engaged in misconduct by presenting a witness at trial that had not been disclosed on its prior witness list. We disagree.

Generally, a claim of prosecutorial misconduct is a constitutional issue reviewed de novo. *People v Abraham*, 256 Mich App 265, 272; 662 NW2d 836 (2003). However, when challenged prosecutorial statements or actions are not preserved by contemporaneous objections and requests for curative instructions, appellate review is for outcome-determinative, plain error. *People v Unger*, 278 Mich App 210, 235; 749 NW2d 272 (2008). The test of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial. *People v Watson*, 245 Mich App 572, 586; 629 NW2d 411 (2001).

Prior to trial, defense counsel stated his understanding that a witness "just came to light over the weekend." The prosecution explained that the witness was the person in a filmed conversation, and that the filmed conversation had been turned over to defense counsel a long time ago, but that the prosecution did not know the identity of the person on the film until recently. Defense counsel posed no objection to the presence and testimony of the witness and, in fact, stated that he would have an opportunity to confer with that witness. MCL 767.40a(4) permits a prosecutor to add or delete from the witnesses he or she intends to call at trial by stipulation of the parties. Defense counsel's acknowledgment of the late witness and his statement that he would confer with the witness could be deemed a stipulation by the parties to allow the testimony of the previously unnamed witness.

Moreover, there is no indication that allowance of the late witness denied defendant a fair and impartial trial or prejudiced him in any way. The testimony the challenged witness, Mr. Combs, was substantially similar to that of other witnesses. Absent Combs' testimony, there was more than sufficient evidence on which to convict defendant.

Defendant also alleges that the prosecutor knowingly offered perjured testimony because witnesses' trial testimony differed from their prior police statements.[5] Although a prosecutor may not knowingly present perjured testimony, the mere fact that a witness gave a prior inconsistent statement does not prove that the witness's trial testimony was actually false. See *People v Bass*, 317 Mich App 241, 272-275; 893 NW2d 140 (2016). In this case, the alleged inconsistencies were presented to the jury and it was up to the jury to determine whether the inconsistencies affected the credibility of the witnesses' testimony. Defendant has not demonstrated that the prosecutor knowingly presented false testimony.

Defendant also refers to the presentation of a codefendant's statement in violation of the Confrontation Clause, US Const, Am VI. See *People v Bruner*, 501 Mich 220, 226-228; 912

---

[5] One of these witnesses, Kadijah Byles, was a defense witness. The prosecutor did not offer her testimony at trial.

NW2d 514 (2018). However, there was no alleged codefendant charged in this matter and defendant does not identify any such statement that was admitted. Therefore, this argument lacks merit.

Defendant also argues that the trial court violated his Sixth Amendment right of confrontation by not allowing him to impeach "unavailable witnesses" or present evidence that witnesses later recanted their testimony. Defendant does not identify the factual basis for this argument and our review of the record fails to disclose that the trial court disallowed any such evidence. Accordingly, this argument is also without merit.

Finally, defendant claims he was denied the effective assistance of counsel. Defendant first cites testimony taken during the preliminary examination and states that his then-counsel cross-examined a prosecution witness about how the witness had lied to the police. Defendant asserts that because the witness, Robert Byles', testimony was discredited at the preliminary examination, it was inadmissible hearsay. Defendant has offered no authority, however, to suggest that discredited or changing testimony constitutes hearsay and this Court is not aware of any such finding. Moreover, defendant cites only to the preliminary examination testimony of this witness. Defendant does not point to any error or ineffective assistance on the part of counsel during the preliminary examination. The witness testified at trial as well, and defendant has identified no testimony of the witness at trial that should have been objected to.

Defendant next relates testimony of one of the prosecution's trial witnesses and appears to argue that counsel was ineffective for failing to point out that the witness testified that Robert Byles was the one who went between the houses where the shots were heard. Defendant misstates the relevant testimony. The witness, Mr. Stafford, testified that two men appeared to be having a verbal altercation, during which one of the men ran up the street and obtained a gun from another man. The man taking the gun, who Stafford identified as defendant, shot in the air, then shot down the street two more times. Stafford testified that defendant:

> . . . as he came he shot one and then lowered and shot at the one that was going that way and then something must have caught his eye because he looked in another direction and then he ran in between the two houses and shot two more times.

Stafford also testified that he "saw the shooter look in that direction and ran in between the two houses" and that he "heard two more shots after he ran between the houses." Stafford did not identify anyone but the shooter running between the two houses, whom he stated was defendant. There is thus no discernable claim of ineffective assistance of counsel advanced by defendant.

Affirmed.

/s/ David H. Sawyer
/s/ Mark J. Cavanagh
/s/ Deborah A. Servitto